UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JASMINE AMIR PETTY,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:25-CV-121-JEM |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 10]. Now before the Court is Plaintiff's Opening Social Security Brief [Doc. 15]. Jasmine Amir Petty ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge, the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons set forth below, the Court will **DENY** Plaintiff's request to remand [**Doc. 15**] and **AFFIRM** the Commissioner.

## I. PROCEDURAL HISTORY

On April 20, 2020, Plaintiff filed for Title II disabilities benefits [Tr. 228–29], and on July 23, 2021, she filed a claim for Social Security Income ("SSI") under Title XVI of the Social Security Act [*Id.* at 230–36]. Plaintiff claimed a period of disability that began on October 29, 2019 [*Id.* at 225]. After her claim was denied initially [*id.* at 106–10] and upon reconsideration [*id.* at 118–22], Plaintiff requested a hearing before an ALJ [*id.* at 139–41]. A hearing was held on November 1, 2021, before ALJ Brian Rippel ("ALJ Rippel") [*Id.* at 14–36]. On October 20, 2021, the ALJ found Plaintiff not disabled [*Id.* at 14–36]. Plaintiff asked the Appeals Council to review

the ALJ's decision [*Id.* at 1–7]. The Appeals Council denied Plaintiff's request for review [*id.* at 1–7], making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed this decision to the United States District Court for the Western District of Virginia [Doc. 15 p. 4]. United States Magistrate Judge Joel C. Hoppe recommended Plaintiff's claim be remanded because the ALJ did not properly evaluate the opinion evidence [*Id.* at 931–59]. United States District Judge Norman Moon adopted the report and recommendation [*Id.* at 928–29]. "While the Plaintiff's initial claim was pending with the [f]ederal [d]istrict [c]ourt, [she] filed a subsequent application for Title II and Title XVI benefits on May 18, 2022" [Doc. 15 p. 4]. According to Plaintiff, "her application was denied at the initial and reconsideration stages and resulted in a hearing before Administrative Law Judge Edkunder Boyd on December 7, 2023" [*Id.* (citation omitted)]. On January 25, 2024, ALJ Boyd denied benefits [Tr. 906–07]. "The Appeals Council then ordered a remand for the Plaintiff's initial and subsequent applications to be consolidated into one hearing and to be consistent with the District Court's order on September 27, 2024" [Doc. 15 p. 4 (citation omitted)].

A hearing was held before ALJ Robin Butler ("ALJ") on February 11, 2025 [Tr. 2004–38]. On April 21, 2025, the ALJ denied benefits [*Id.*]. Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 4, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed opposing briefs, and this matter is now ripe for adjudication [Docs. 15, 20, 21].

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since October 29, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: a seizure disorder, anxiety, depression and an unspecified neurocognitive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find the claimant retains the residual functional capacity to lift, carry, push and/or pull up to 20 lbs occasionally and 10 lbs frequently. She is able to stand and/or walk for six hours and sit for six hours over the course of an 8-hour workday. She should never climb ropes, ladders or scaffolds, but is able to occasionally climb ramps and stairs. She is able to occasionally balance as the term is defined in the DOT and SCO. She is able to occasionally stoop, kneel, crouch and crawl. The claimant should avoid even moderate exposure to work related hazards and all exposure to strobe or flashing lights as well as noise above level 3 (defined as that found in an office environment, in a department store, or in light traffic). She is able to understand, remember, and carry out simple instructions and use judgment to make simple work related decisions. She is able to adapt to occasional changes

in the routine work setting. She is able to maintain concentration and persistence for at least two hours at a time throughout an 8-hour workday with regular breaks. She should not perform work requiring a specific production rate, such as work that requires strict hourly quotas. She is limited to occasional interaction with the public that does not involve adversarial type activities, such as job tasks that require addressing customer complaints.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 19, 1989, and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 2009–29].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. ANALYSIS

Plaintiff claims the ALJ committed two errors [Doc. 15]. First, she asserts that the ALJ failed to evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920 [*Id.* at 16–21]. Second, she argues that the ALJ did not comply with the Appeals Council's prior remand order [*Id.* at 21–22].

For the reasons below, the Court finds the ALJ did not commit reversible error.

### A. Medical Opinion Evidence

Plaintiff asserts that "the ALJ has erred with regard to the opinion of the Plaintiff's treating doctor, Dr. Pyland, as well as with the opinion of consultative examiner Dr. Cianciolo" [Doc. 15 p. 17 (citation omitted)]. Plaintiff acknowledges that Dr. Pyland gave "a very limiting opinion," but she states that "it is not without support in the record, given Plaintiff's complicated history of neurocognitive disorder and epilepsy" [*Id.* at 18]. According to Plaintiff, "It is also consistent with many of the abnormal physical exams in Plaintiff's treatment record, including panic attacks, drowsiness, and slowed cognition/memory" [*Id.* (citation omitted)]. She claims that "the ALJ's error here was that her findings regarding this opinion were not supported by substantial evidence"

[*Id.*]. In addition, she contends that "the ALJ failed to evaluate Dr. Pyland's opinion pursuant to the requirements of 20 C.F.R. 404.1520c" [*Id.*].[1] Plaintiff argues, "The ALJ only included generalized references to the record and her own theories about what should have happened by way of treatment planning" [*Id.* (citation omitted)]. "The ALJ offered[,]" Plaintiffs submits, "a conclusory statement regarding the totality of the record without offering any specific citations to substantiate her opinion of the persuasiveness of the Plaintiff's treating neurologist" [*Id.* (citation omitted)]. While the ALJ may have provided a supportability analysis, Plaintiff states that "the ALJ did not provide sufficient analysis for the second factor of consistency" [*Id.* (citation omitted)]. This error, Plaintiff claims, constitutes reversible error [*Id.*]. She further contends the ALJ did not sufficiently address Dr. Cianciolo's and Dr. Pyland's opinions about Plaintiff's need to be absent from work [*Id.* at 19 (citation omitted)]. Plaintiff submits that Dr. Pyland's and Dr. Cianciolo's opinions "are supported by the numerous medical visits, hospitalizations, telehealth, and physical therapy appointments" [*Id.* at 20 (citations omitted)]. "[H]ad Dr. Pyland's opinion been adopted in terms of the physical limitations[,]" Plaintiff argues, "it would have rendered Plaintiff unable to sustain full-time work regardless of exertion level because of her inability to sit, stand, or walk for a full eight-hour workday" [*Id.* at 21 (citation omitted)].

Defendant responds that the ALJ reviewed the claim on its merits and that she "cited to the relevant exhibits" [Doc. 20 p. 12]. In addition, Defendant asserts that "the ALJ did not ignore the evidence that Plaintiff cites as contradictory" [*Id.* at 14 (citation omitted)]. Defendant states that "the ALJ explained in her decision how she considered the two most important factors of supportability and consistency in evaluating the persuasiveness of the medical opinions and prior

[1] As Plaintiff acknowledges, 20 C.F.R. § 416.920c is identical to 20 C.F.R. § 404.1520c [Doc. 15 p. 16 n.1].

administrative medical findings" [*Id.* at 17]. And while Plaintiff argues that Dr. Pyland's opinion is supported by the record, Defendant contends that "[t]he ALJ explained why she was not persuaded, and she articulated her consideration of both the supportability and the consistency factors when doing so" [*Id.* at 25 (citation omitted)].

Plaintiff filed a reply, arguing that "the ALJ failed to identify evidence other than what supports her ultimate conclusions" [Doc. 21 p. 2 (citation omitted)]. "Moreover," she states, "the Commissioner appears to also ignore the totality of the evidence where Plaintiff reported her epilepsy was poorly controlled and that she was having seizures once per week and the need to reduce her medications was due to the side effects" [*Id.* (citations omitted)]. She contends that "the ALJ's consistency and supportability analysis remains insufficient" [*Id.*]. "While the ALJ is not required to offer pinpoint citations," Plaintiff submits, "there has to be sufficient reference to the record and the ALJ has to show her work, which she did not" [*Id.* (citations omitted)]. In addition, Plaintiff contends that Defendant "does not appear to address the absenteeism issue" [*Id.* at 2].

In determining the appropriate RFC, the ALJ will consider "the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). When determining the persuasiveness of medical opinions and prior administrative medical findings, the most important factors the ALJ will consider are supportability and consistency. 20 C.F.R. § 404.1520c(a). In her discretion, she may consider other factors. 20 C.F.R. § 404.1520c(b)(3). "Supportability requires the ALJ to evaluate how much the medical conclusions are supported internally, as well as by other treatment notes and exams by the evaluating physician." *Jacqueline B. v. Comm'r of Soc. Sec.*, No. 2:25–CV–00295, 2025 WL 3280258, at *6 (S.D. Ohio Nov. 25, 2025) (citations omitted), *report and recommendation*, 2026 WL 332387 (S.D. Ohio Feb. 9, 2026). With respect to consistency, it "requires the ALJ to compare the report's conclusions to the evidence offered in other sources in

the record." *Id.* at *7 (citations omitted). The ALJ must explain how she considered supportability and consistency. 20 C.F.R. § 404.1520(c)(b). Even so, "the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail." *Chad T. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00052, 2022 WL 4355001, at *8 (S.D. Ohio Sept. 20, 2022) (citations omitted).

Dr. Pyland treated Plaintiff on April 16, 2021 [Tr. 1700]. He noted her chief complaints were seizures and dizziness [*Id.*]. Dr. Pyland completed a Physical Impairment Questionnaire on the same day [*Id.* at 705]. He explained that she had been his patient for ten months and that his diagnosis included "localized related symptomatic epilepsy, subarachnoid hemorrhage" [*Id.*]. He opined that she "may have seizures in future" and noted the following symptoms: seizures, dizziness, diffuse body pain, anxiety, and concentration problems [*Id.*]. He stated that she experiences symptoms frequently and that she experiences dizziness and drowsiness from her seizure medication [*Id.*]. He opined that Plaintiff would need to recline or lie down during an 8-work day and in excess of typical breaks [*Id.*]. Dr. Pyland further opined that Plaintiff can walk four blocks, stand and walk for only ten minutes at a time, and could sit for six hours while standing and walking for one hour in an eight-hour workday [*Id.*]. He further stated Plaintiff would need a job that permits shifting positions, she can frequently carry less than ten pounds, occasionally carry ten pounds, and never carry twenty pounds or more [*Id.* at 705–06]. Dr. Pyland noted that Plaintiff had limitations with repetitive reaching, handling, or fingering [*Id.* at 706]. He stated that she would miss work once or twice a month and that she was not a malingerer [*Id.*]. He concluded that Plaintiff was not physically capable of working eight hours a day, five days a week on a sustained basis [*Id.*].

Dr. Cianciolo performed a consultative psychological assessment of Plaintiff on February 24, 2021 [Doc. Tr. 676]. He opined:

> Based upon the results of this evaluation, it appears that the patient does possess the intellectual capability necessary to perform simple and repetitive tasks in relatively unimpaired fashion. Her ability to perform detailed and complex tasks would appear to be severely impaired as evidenced by test results. Her ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and completing a normal workday or work week without interruption from psychiatric condition would appear to be moderately impaired. Given her current level of cognitive functioning it appears likely that she would require additional assistance in supervision within the workplace. She does appear to be capable of accepting concrete instruction from supervisors. Her ability to interact with coworkers and the public as well as coping with routine stressors encountered in competitive work would appear to be moderately impaired. While there is no indication for inpatient psychiatric treatment at the current time outpatient psychiatric treatment is indicated. Given her overall level of cognitive functioning and memory deficit it appears likely that she would require additional assistance in adequately managing her own funds. Prognosis for significant change would appear to be guarded.

[*Id.* at 677–78].

The ALJ summarized Dr. Pyland's opinion [*Id.* at 2025]. The ALJ found his "opinion to be unpersuasive" [*Id.* at 2026]. She explained, "While he is a treating physician who would be expected to have some insight into the claimant's overall condition, the opinion expressed here is not supported by the objective medical findings" [*Id.*]. In addition, the ALJ noted, "Despite the concerns of the District Court Judge, this opinion is unsupported by evidence and inconsistent with the claimant's presentation at all visits prior to the rendering of this opinion" [*Id.*].

The ALJ summarized Dr. Cianciolo's opinion [*Id.* at 2023]. She found his "opinion somewhat persuasive" [*Id.*]. She explained that Plaintiff "has some support for decreased cognition since her seizure activity" and that "[s]he has described difficulty with focus and concentration" [*Id.*]. But, the ALJ noted, "her treatment records and the evaluation by Mr. Stair show a much

lower degree of limitation in concentration, attention, and focus" [*Id.*]. According to the ALJ, "The endorsement of a moderate impairment of the ability to maintain regular attendance and to perform work activities on a consistent basis or to complete a normal workday or work week without interruption from psychiatric condition supports a limitation to simple instructions with an avoidance of pressure sensitive jobs such as those with production quotas" [*Id.*]. With this clarification, the ALJ found that Dr. Cianciolo's opinion was consistent with the findings of the state agency consultants and Mr. Stair" [*Id.* at 2024].

Plaintiff argues that Dr. Pyland's opinion "is not without support in the record" and that "[it] is also consistent with many of the abnormal physical examinations in Plaintiff's treatment record, including panic attacks, drowsiness, and slowed cognition/memory" [Doc. 15 p. 18]. The Court, however, cannot reweigh the ALJ's findings, "even if substantial evidence would support the opposite conclusion." *Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (citation omitted). Moreover, while the ALJ need not "cite to every piece of evidence or conclusion," *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(a)), the Court observes that the ALJ detailed Plaintiff's abnormal physical examinations [*See* Tr. 2015 (detailing Plaintiff's October 29, 2029 emergency room visit); *id.* (detailing the Plaintiff's November 21, 2019 visit with Dr. Zimmet); *id.* at 2015–16 (detailing Plaintiff's medical visits relating to her anxiety and her associated symptoms); *id.* at 2016 (detailing Plaintiff's March 8, 2020 emergency room visit); *id.* (detailing Plaintiff's April 17, 2020, telemedicine appointment); *id.* (detailing Plaintiff's May 28, 2020, emergency room visit); *id.* at 2017 (detailing Plaintiff's seizure in October 2020); *id.* at 2018 (detailing Plaintiff's appointment with Ms. Overstreet); *id.* at 2019 (detailing Plaintiff's February 2022 appointment with Ms. Overstreet); *id.* (describing Plaintiff's dizziness and inattentiveness);

*id.* at 2019–2020 (describing Plaintiff's evaluation with Mr. Stair); *id.* at 2020 (describing Plaintiff's evaluation with Holistic Psychotherapy); and *id.* at 2021 (describing Plaintiff's November 5, 2023 emergency room visit)].

Plaintiff argues that "[t]he ALJ only included generalized references to the record and her own theories about what should have happened by way of treatment planning" and that she "offered a conclusory statement regarding the totality of the record without offering any specific citations to substantiate her opinion of the persuasiveness of the Plaintiff's treating neurologist" [Doc. 15 p. 18 (citations omitted)]. For instance, Plaintiff states that "the ALJ alleges that in Exhibit 7F[,] the Plaintiff's focal epilepsy was well controlled; however, nowhere in Exhibit 7F does it reference controlled epilepsy, in fact, in Exhibit 7F[,] there is a reference to a seizure episode on December 29, 2021" [*Id.* at 20]. Plaintiff's challenges do not warrant remanding the case. *See Cobb v. Saul*, No. 2:18-CV-68, 2019 WL 4601705, at *4 (E.D. Tenn. Sept. 23, 2019) ("While the Court is mindful that the medical record is voluminous in this case, remand to include pinpoint citations is not required." (citation omitted)). Indeed, "[t]he ALJ's discussion of the evidence contains enough information to identify the record to which [s]he refers." *Id.* As to Plaintiff's argument that the ALJ misconstrued Exhibit 7, Dr. Pyland wrote "Focal Epilepsy: controlled" [Tr. 688].[2] This is consistent with the ALJ's description of Exhibit 7 [*Id.* at 2017].[3] Plaintiff states, "On November 30, 2021, after the date cited by the ALJ, the Plaintiff reported having seizures

---

[2] As Defendant notes, Plaintiff cites to page 1927 of the transcript, but this is Exhibit B7F [Doc. 20 p. 14 n.14] "The ALJ, however, referenced Exhibit 7F, which does reference controlled epilepsy" [*Id.* (emphasis and citated omitted)].

[3] Defendant acknowledges that the ALJ made a scrivener's error on the date of the appointment [Doc. 20 p. 12 n.4]. The ALJ noted the visit occurred on August 16, 2021, but the appointment was April 16, 2021 [Tr. 2017]. Even so, the ALJ summarized this visit in detail [*Id.* at 2017–18].

once per week, as she needed to reduce her medications due to frequent nausea and vomiting caused by her medications" [Doc. 15 p. 20]. The ALJ, however, considered this evidence [Tr. 2019].

Plaintiff acknowledges the ALJ analyzed the supportability of Dr. Pyland's opinion [*see* Doc. 15 p. 19][4] but claims that she failed to provide a sufficient consistency analysis. As Defendant points out, "[T]he ALJ discussed the evidence from other providers and from Plaintiff, all of which pertains to the consistency factor" [Doc. 20 pp. 23–24 (citing Tr. 2026)]. For example, the ALJ explained the treatment records "from other providers" showing "physical examination[s] [that] revealed full strength in all extremities" and "no indication of any lingering neurological deficits such as sensation loss or spastic movements" [Tr. 2026]. The ALJ further noted, "Physical examination was a normal at these visits as well as in all visits to her neurologists" [*Id.*]. She added, "There was no indication from the claimant or any physician that her seizures were triggered by physical exertion" [*Id.*]. She also compared Dr. Cianciolo's absenteeism opinion to Dr. Pyland's absenteeism opinion [*Id.* at 2027]. The ALJ therefore analyzed the consistency of Dr. Pyland's opinions. *See Andrew E. v. Comm'r of Soc. Sec.*, No. 2:24-CV-276, 2025 WL 724606, at *4 (S.D. Ohio Mar. 6, 2025) ("Neither a particular length of analysis nor specific 'magic words' are required." (quoting *Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-CV-00188, 2023 WL 8614065, at *5 (S.D. Ohio Dec. 13, 2023), *report and recommendation adopted*, No. 2:23-CV-00188, 2024 WL 689322 (S.D. Ohio Feb. 20, 2024))).

---

[4] Plaintiff asserts in her reply that "the ALJ's consistency and supportability analysis remains insufficient" [Doc. 21 p. 2]. Plaintiff did not challenge supportability in her opening brief and therefore has waived this issue. "Generally speaking, arguments raised for the first time in reply briefs are waived[.]" *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (citations omitted). Regardless, the ALJ performed a supportability analysis by specifically detailing how Dr. Pyland's exams were inconsistent with his conclusions [*See* Tr. 2026].

Plaintiff argues "the opinions of Dr. Pyland and Dr. Cianciolo are supported by the numerous medical visits, hospitalizations, telehealth, and physical therapy appointments" [Doc. 15 p. 20]. But as noted above, the ALJ discussed Plaintiff's medical records in detail [*See* Tr. 1013–28]. Moreover, she found Dr. Cianciolo's opinion somewhat persuasive [Tr. 2023]. She ultimately found the prior administrative medical findings of State agency psychological consultants Howard Leizer, Ph.D.; Edward Sachs, Ph.D.; and Arthur Stair, III, M.A. and the prior administrative medical findings by State agency medical consultants Richard Surrusco, M.D., and Jack Hutcheson, M.D., persuasive [Tr. 2022–24]. And she explained her reasons for doing so [*See id.*]. *See Kopis v. Kijakazi*, No. 1:22-CV-02212, 2024 WL 1131058, at *2 n.2 (N.D. Ohio Mar. 15, 2024) ("There is ample case law concluding that State Agency medical consultative opinions may constitute substantial evidence supporting an ALJ's decision." (collecting cases)).

Plaintiff argues that "the ALJ made what appears to be a half-hearted attempt to address the limitation assessed by consultative examiner Dr. Cianciolo and the consistency with Dr. Pyland's absenteeism opinion" [Doc. 15 p. 19 (citation omitted)]. The ALJ explicitly discussed these opinions and how she incorporated Dr. Cianciolo's opinion into the RCF [*See* Tr. 2026]. *See Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 901 (6th Cir. 2019) (explaining that it is the ALJ's role to evaluate functional capabilities). Plaintiff argues, "The frequency of absenteeism due to treatment must be considered in the [RFC] assessment" [Doc. 15 p. 20 (emphasis and citation omitted)]. The ALJ addressed Dr. Pyland's absenteeism opinion [*see* Tr. 2025] and found it was not the same as Dr. Cianciolo's opinion [*Id.* at 2027].

The Court finds the ALJ did not err in addressing the medical opinions.

### B. The Appeals Council's Remand

Plaintiff asserts, "The Federal District Court for the Western District of Virginia remanded the Plaintiff's claim on March 21, 2024, specifically due to the prior ALJ's failure to give proper consideration to the opinion of the Plaintiff's treating source, Dr. Pyland" [Doc. 15 p. 21]. According to Plaintiff, the Appeals Council remanded the case "for further proceedings consistent with the order [of] the court" [*Id.* (citation omitted)]. Plaintiff argues that "the ALJ again discredited the opinions of Dr. Pyland and did not specify any evidence contradicting the opinion" [*Id.* (citation omitted)]. "Rather," she claims, the ALJ offered conclusory statements, overly broad interruptions of the medical evidence of record, and illogical connections from the opinions of the medical experts to limitations; all without citations to the record for a reviewing Court to conclude she followed the remand order" [*Id.* (citations omitted)]. Plaintiff asserts, "Judge Hoppe outlined that the opinions of Dr. Pyland and Dr. Cianciolo are at least partially persuasive and that the limitations would support off-task or absenteeism based on the language in the opinion of Dr. Cianciolo" [*Id.* at 22 (citation omitted)]. She argues that the "ALJ made a spurious connection to being moderately impaired in her ability to maintain attendance to not working 'at a specific production rate pace, or with more than occasional interaction with the public'" [*Id.* (citation omitted)].

Defendant responds that "[t]he ALJ's decision plainly and explicitly recites the orders of the district court, and in compliance with the same, she explains how and why she reached her conclusions" [Doc. 20 p. 6]. He states, 'The ALJ's analysis of the doctors' medical opinions adhered to the regulations, which require consideration of the support provided for a medical opinion and its consistency with the record as a whole" [*Id.* at 23 (citations omitted)]. Defendant submits that the remand order "directed the ALJ to provide a reasonable basis for discounting

Dr. Pyland's opinion, and she did so" [*Id.* at 25]. According to Defendant, "Plaintiff's argument amounts to a request to re-weigh the evidence to reach a different conclusion" [*Id.* (citation omitted)].

Judge Hoppe found that the previous ALJ did explain whether Dr. Pyland's opinion regarding Plaintiff's absenteeism was inconsistent with the other evidence, and he noted that Dr. Cianciolo's "opinion is at least partially consistent with Dr. Pyland's findings that [Plaintiff] would be absent and require breaks in excess of those customarily allowed" [Tr. 956 (citation omitted)]. He noted, the ALJ "acknowledged Dr. Cianciolo's findings, but he did not explain whether he found them consistent with Dr. Pyland's findings" [*Id.*]. Judge Moon adopted Judge Hoppe's report and recommendation [*Id.* at 928–29]. The Appeals Council thereafter remanded the case to an ALJ [*Id.* at 963].

The ALJ explicitly noted the court's decision:

> The US District Court Judge, also directed that the prior administrative law judge should have explained whether the opinion of the consultative examiner Dr. Cianciolo that the claimant had moderate impairments in her abilities to maintain regular attendance in the workplace; perform work activities on a consistent basis; complete a normal work day or work week without interruption from psychiatric conditions; interact with coworkers and the public; and cope with routine stressors encountered in competitive work was consistent with the opinion of Dr. Pyland that the claimant would need unscheduled breaks during an 8 hour work day and would need to be absent from work once or twice per month due to her impairments. There is some consistency in these opinions in their findings that the claimant would have difficulty with working consistently and would have difficulty with frequent change or high stress work environments. However, the assertion by Dr. Cianciolo the claimant would have moderately impaired ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, or complete a normal workday or work week without interruption from her psychiatric condition is not the same as the statement from Dr. Pyland that she would be absent and require breaks in excess of those customarily allowed. The moderate impairment as described by Dr. Cianciolo is accommodated in the

> residual functional capacity above in the limitations to simple work with only occasional changes while not being required to work at a specific production rate pace, or with more than occasional interaction with the public. Limiting her functional capacity in this manner is sufficient for this moderate impairment described by Dr. Cianciolo, without the describe the need for unscheduled breaks and excessive absences endorsed by Dr. Pyland. The claimant's presentation in the treatment records and in the evaluation by Mr. Stair show the claimant was able to complete simple tasks and procedures without significant difficulty while interacting with a person with whom she was not familiar. She showed few signs or symptoms of significant anxiety, depression, or cognitive impairment over the course of her long treatment history. The evaluation by Dr. Cianciolo is a deviation from her presentation at these visits, including the IQ testing which is inconsistent

[Tr. 2026].

The Court finds that the ALJ complied with remand order. Judge Hoppe noted that Dr. Pyland and Cianciolo's opinions were "at least partially consistent" and that the ALJ did not explain whether he found Dr. Pyland and Dr. Cianciolo's opinions were consistent [*Id.* at 956]. The ALJ did so here, finding there was some consistency but ultimately Dr. Pyland's and Dr. Cianciolo's absenteeism opinions were not the same. Plaintiff argues that the ALJ "did not specify any evidence contradicting the opinion" and that the ALJ's reasons for discounting Dr. Pyland are conclusory. As noted above, the ALJ explained the medical evidence in detail and found that his conclusions were not consistent with her physical examinations. *See Napier*, 127 F.4th 1007 (explaining that the court cannot weigh the evidence). The ALJ did not err.

## V. CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiff's request to remand [**Doc. 15**] and **AFFIRMS** the Commissioner.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge